## Swoll *et al. vs.* Oliver *et al.*

1. Where, in 1842, a free person of color paid the purchase money for certain land, and title was made to a third party in his own name, but upon an agreement with her to hold it in trust for her and her heirs, such trust was void, as being contrary to the then declared policy of the state. Neither she nor her heirs could enforce it.

2. The deed from the city of Savannah to Cally provided that he was to pay a stipulated amount quarterly as ground-rent; that "in case of failure herein for the space of twenty days after any of the said quarterly payments shall become due, that then the said lot and premises shall revert to the corporation of said city, who shall immediately thereafter possess the power of re-entry; and having by means of their proper officers executed such power, and given a notice thereof in writing posted on the premises, said lot, with all the improvements thereon, shall be considered, at the expiration of ten days thereafter, as absolutely revested in the corporation, and the estate by these presents created, determined to all intents and purposes as fully as if the same had not been bargained for or purchased."

*Held,* that if the city, by its proper officer, posted a notice of re-entry on the lot according to the terms of the deed, such act would constitute a re-entry thereon, and, after the expiration of ten days, would defeat the title of the purchaser.

Estates.   Trusts.   Contracts.   Persons of color.   Deeds. Before Judge Tompkins.   Chatham Superior Court.   February Term, 1878.

Oliver *et al* claimed the land in dispute through Aspasia Mirault.   Cronk claimed it as administrator of Cally, who died pending the litigation.   Each party filed a bill against Swoll, who claimed under a purchase from the city of Savannah and others; the cases were tried together.

For the other facts see the decision.

W. D. Harden; R. E. Lester, for Swoll *et al.* cited as follows: Nature of Cally's title, T. U. P. Charlton, 113; Savannah City Code, 1871, pp. 104, 94.   Bills demurrable, Adams Eq., 303; Code, §§3114, 3123, 3124.   Conditional limitation in deed, Walker's Am. L. (6th Ed.), 331; Smith's Land & Ten., 152; 2 Bl. Com., 154.   Entry sufficient, 1 Hilliard on Real Property, 83; 2 Saunders' Pl. & Pr., pt. 2,

1133, 1083, 1086, 1093 ; 11 Mod., 74 ; 1 Stark., 56, 130; Doct. & Stud., 30 ; 2 Bouv. Inst., 264.   Custom, Code §3805 ; 10 Wal., 390.   Actual entry not necessary, Walker's Am. L., (6th Ed.) 331 ; Smith's Land. & Ten., 110 ; 1 C. & P., 346 ; 15 M. & W., 718 ; Ang. on Lim., §369, (3d Ed.); Tyler on Eject., 36.   Statute of limitations, Ang. on Lim., (3d Ed.) §438 ; 3 Hill, (N. Y.) 344 ; 7 East, 299 ; 5 Cowen, 123.

A. B. Smith, for Oliver *et al.*, cited as follows :   Under act of 1818, forfeiture by escheat, Cobb's Dig., 249, 993.   Requirements precedent to forfeiture, 2 Curtis C. C., 439 ; 4 Kent Com., 427; Blackwell on Tax Titles, 460-468 ; 50 *Ga.*, 422 ; 27 E. C. L., 179 ; 5 B. & A., 765 ; 2 Bl. Com., 344, 349; 3 *Ib.*, 259 ; 25 Me., 362 ; 31 *Ga.*, 700 ; 2 Just., 221 ; 5 Coke, 52 ; 3 *Ib.*, 10 ; Blackwell on T. T., 459-472 ; 7 Cranch, 603-622.   7 Wend., 368 ; 16 Pick., 177-180 ; 13 Wend., 546-8 ; 2 Bl. Com., 267 ; 44 Miss., 367, 372-4 ; 24 *Ib.*, 16 ; Blackwell, 460, 531, 533 ; 3 Littleton, 38 ; 1 Littleton, 60.   Forfeiture waived, Code §§1, 2, 3, 5, 145, 5236, 4449.   Act of 1818 repealed and obsolete ; effect of same, acts 1866, p. 239 ; 5 Cranch, 281 ; 6 *Ib.*, 329 ; 12 *Ga.*, 475, 495 ; 16 N. J. (1 H. & W.), 285 ; 26 Barb., 23; 1 N. H., 61 ; 10 Watts, 351 ; 6 N. Y., 281 ; 7 Penn. St., 173 ; 17 Ala., 328 ; 5 Ind., 535 ; 17 La., 182 ; 12 Md., 322 ; 1 Murphy, N. C., 465 ; 13 How., 431 ; 10 Wend., 266 ; 13 Pick., 546 ; 16 *Ib.*, 179-80.   Re-entry, 1 Bouv., 528 ; 2 *Ib.*, 429 ; 2 Bl. Com., 174 ; 20 *Ga.*, 566 ; 4 Cranch, 403 ; 4 Wheaton, 77.

T. M. Norwood, for Cronk, adm'r., cited as follows : Mirault (a person of color) cannot take, Cobb's Dig., 993, §8 ; 46 *Ga.*, 399 ; 58 *Ib.*, 118 ; 5 *Ib.*, 416 ; 11 *Ib.*, 457.   Requirements before escheat, 20 *Ga.*, 566 ; 7 Cranch, 620, *et seq.;* 5 *Ib.*, 281 ; 4 Jacob's Dic., (office found). Re-entry, 2 Bouv. Inst., 264; 8 Bac. Abr., 482 ; 7 Term. R., 117 ; 20 *Ga.*, 566.

Warner, Chief Justice.

The complainants, as the heirs at law of Aspasia Mirault,

filed their bill against the defendants, praying that they might be decreed to execute good and sufficient titles to lot number 22, Pulaski ward, in the city of Savannah, upon the allegations contained therein. It also appears from the record that George Cally filed his bill against Swoll and the city of Savannah, claiming the same lot as his property, and prayed that a deed therefor which had been executed by the city to Swoll might be delivered up to be canceled upon the allegations contained therein. By consent of the parties thereto, both cases were consolidated and tried together, and the jury, under the charge of the court, found the following verdict:

"We, the jury, find that when the city of Savannah caused the notice of re-entry to be posted on the lot of land in dispute, number 22, Pulaski ward, in 1872, and advertised the same for sale for non-payment of ground rent, that there was due as ground-rent on said lot to the city the sum of $41.43. We further find that before the advertisement and sale of said lot, on the 7th of May, 1872, by the city for non-payment of ground-rent, that the city of Savannah had not regularly and lawfully re-entered upon said lot, under the terms of the deed of said lot to George Cally, on the 29th of April, 1842.

"We further find that the money paid by George Cally to the city for said lot was the money of Aspasia Mirault, and that Cally agreed with said Aspasia Mirault that he would take the deed in his own name, but in trust for the use and benefit of said Aspasia Mirault and her lawful heirs, and that after said purchase by Cally, said Aspasia Mirault did possess, control and enjoy said lot with the knowledge and consent of Cally, and that she did pay, or cause to be paid, the taxes, ground-rent, and other dues upon said lot, with her own money.

"We further find, that George Cally, in his lifetime, did act as the trustee of the said Aspasia Mirault, and recognize and admit and treat her as the true owner of said lot number 22, Pulaski ward, and that Robert S. Oliver, Charles B.

Styles, Louisa Burton and Mary A. Jackson, are the lawful and only surviving heirs of said Aspasia Mirault.

" We further find that the sale of said lot of land by the city of Savannah, on the 7th of May, 1872, to William Swoll, was not a valid and lawful sale.

" We further find that Aspasia Mirault, in her lifetime, did put valuable improvements upon said lot of land after the purchase from the city in 1842, and that the said lot of land, with the erections, is the property of the lawful heirs of Aspasia Mirault.

" We further find that George Cally, before the sale at which Swoll bought, did know that the city of Savannah had, according to its usual custom, re-entered upon said land and advertised it for sale. That is, we find that Cally knew that the city had done, through its proper officers, everything which the city claims should be done to effect a re-entry and re-possession of the lot under the terms of the deed to Cally, by the city, of 29th April, 1842.

" We further find that George W. Styles, city marshal of Savannah, was the proper officer to make the re-entry upon the lot of land, and that he did cause the notice of re-entry to be posted upon the premises more than sixty days before the sale to Swoll on the 7th May, 1872."

A motion was made for a new trial on the grounds therein stated which was overruled, and defendants excepted. It appears from the evidence in the record, that on the 29th April, 1842, the city of Savannah conveyed by deed lot No. 22, Pulaski ward, to George Cally, " to have and to hold the said lot, with all and singular the advantages thereunto belonging, unto the said George Cally, his executors, administrators and assigns forever, on this express condition, nevertheless, that if the said George Cally, his executors, administrators and assigns, do and shall yearly and every year during such time as the said valuation money shall remain unpaid, by four equal and quarter-yearly, payments, pay or cause to be paid into the city treasury of Savannah aforesaid, the sum of forty-one dollars and thirty-three cents, as

ground-rent for the use and occupation of said lot and premises, the first quarterly payment to be made on the 29th day of July next ensuing, and in case of failure herein for the space of twenty days after any of the said quarterly payments shall become due, that then the said lot and premises shall revert to the corporation of said city, who shall immediately thereafter possess the power of re-entry ; and having, by means of their proper officers, exercised such power, and given a notice thereof in writing, posted on the premises, the said lot, with all the improvements thereon, shall be considered, at the expiration of ten days thereafter, as absolutely revested in the corporation, and the estate by these presents created, determined, to all intents and purposes, as fully as if the same had not been bargained for or purchased, any sale or incumbrance or other act made or suffered by the said George Cally, his executors, administrators or assigns, or others under him or them, to the contrary thereof in anywise notwithstanding."

1. There were three questions presented by the evidence in the record for the adjudication of the court and jury on the trial of the cause.     First, was Aspasia Mirault a free person of color, and did she pay the purchase money for the lot in dispute, and was the deed therefor made to Cally to hold the title to the lot in trust for her?     If such were the facts, as shown by the evidence, then the trust in her favor under the deed to Cally, as the law then stood (29th of April, 1842), was void by the eighth section of the act of 1818, as being against the then declared policy of the state.     Cobb's Digest, 993 ; *Bennett vs. Williams*, 46 *Ga.*, 399 ; *Munroe vs. Bassinger*, 58 *Ga.*, 118. If Aspasia Mirault could not enforce the trust under the deed to Cally if she were in life, her heirs cannot do so after her death.

2. Did Cally pay, or cause to be paid, into the city treasury of Savannah, the quarterly payments as stipulated in the deed to him, so as to defeat the right of the city to re-enter upon the lot?

3. If Cally did not pay, or cause to be paid, into the

city treasury of the city of Savannah, the quarterly payments as stipulated in the deed, did the city of Savannah exercise the power of re-enter on said lot by its proper officer, and give notice thereof in writing, posted on the premises, as stipulated in said deed? If it did, then the city, after the expiration of ten days thereafter, according to the terms of the contract, is to be considered as having exercised its power and right to re-enter upon the lot, and as having reinvested itself with the title thereto, as stipulated in the contract of the parties thereto, the same not being in contravention of any law or declared policy of the state. The court charged the jury, amongst other things, to the effect that if the city had, by its proper officer, posted a notice on the lot of its re-entry thereon for the non-payment of the ground-rent, as stipulated in the deed, that it would not constitute a re-entry, and defeat Cally's title to the lot. This charge of the court, in view of the stipulations contained in the deed, was error, inasmuch as the parties, by their own voluntary contract, agreed with each other as to what acts should constitute the evidence of such re-entry on the lot by the city. Let a new trial be granted, and the cause be tried in conformity with the views of this court as expressed in this opinion.

Judgment reversed.